## The Mayor, Aldermen and Commonalty of the City of New York v. William C. Rice.

The common council of the city of New York are authorized by law to grant the exclusive use of piers, wharves and slips for particular classes or descriptions of vessels.

But whether they are empowered to grant to individuals the exclusive use of piers, wharves and slips for the benefit of the grantees? *Quere.*

If such power exists, its exercise can be effected only by laws or ordinances passed by them in their legislative capacity.

It cannot be accomplished by deed or lease executed under the authority of the common council, by officers of the corporation.

Assuming the validity of a grant by lease of such exclusive use, the same will not suspend the operation of the general ordinances of the common council regulating the use of the wharves, piers and slips.

Where a lease granted "the east half of pier number seven, and west half of pier number eight, Coenties slip, with bulkhead between, together with the end of pier number seven and one half of the end of pier number eight;" *held*, that the grant included the entire waters between piers seven and eight.

In giving an order to remove a vessel, a dockmaster is bound, under § 11 of the ordinance of May 8, 1839, to allow a reasonable time for a compliance therewith.

A person disobeying cannot escape the penalty prescribed for such disobedience, by showing that the direction to remove was given with the intent of accommodating, within the slip, a vessel by law excluded therefrom.

The Mayor, &c., of New York *v*. Rice.

THIS action was instituted by the corporation of New York, to recover the penalty mentioned in the following provisions of an ordinance of the common council, adopted May 8th, 1839:

"SEC. 11. If the master, owner or person having charge of any vessel or small craft, which shall lie in any of the aforesaid public slips, shall not remove the same out of such slip, or from one part of such slip to another part thereof, as may be directed, by the expiration of the time within which he or any seaman, mariner or person employed on board may be so ordered to remove such vessel or small craft, either by the mayor, recorder, or either of the aldermen or assistants of the said city, or the dockmasters mentioned in this title, every such owner or master of such vessel or small craft shall respectively forfeit and pay for every such offence the sum of twenty-five dollars.

"SEC. 12. Either of the persons mentioned in the preceding sections of this title may give such order and direction, from time to time, to the owner, master or person having charge of any sloop, boat or other vessel whatsoever, lying at or within any of the said public wharves, docks, piers or slips, or to any seaman, mariner or person employed on board as they shall respectively think just and proper, touching the lying, fastening and berth of any such sloop, boat or other vessel whatsoever."

Under the authority of the common council, a lease to one Holt, for a term of years, was executed by the mayor, aldermen and commonalty, under the seal of the city, attested by the mayor and clerk of the corporation, conveying the absolute right to collect the wharfage and slippage of the premises hereinafter mentioned. The lease contained numerous printed covenants and conditions, to the effect, among other things, that the lessee and his assigns would observe all laws and ordinances of the common council relative to the docks, wharves, piers and slips. It also included an express grant, in writing, of "the exclusive use of the east half of pier number seven, and west half of pier number eight, Coenties slip,

with bulkhead between, together with the end of pier number seven and half of the end of pier number eight, any thing herein contained to the contrary notwithstanding."

The instrument in question was assigned to the Western Transportation Company, by which the slip was occupied with canal boats employed in their business. The defendant had charge of the slip, as agent of the company, when one Halpin, a dockmaster, directed him to remove two canal boats, lying within the slip, in order to accommodate the bark " Monales," a vessel of five hundred tons. The defendant disobeyed the order.

The cause was tried in the Third District Court, where the justice, Mr. WILLIAM B. MEECH, gave judgment for the plaintiffs. In an able opinion the justice maintained, in substance, the following propositions: 1. That whatever construction might be placed upon the lease, the ordinances of the common council continued in full force, and the corporation retained " a police regulating power;" 2. That the order of the dockmaster was a proper exercise, by the corporation, acting through him as their agent, of the power in question; 3. That the navigable waters surrounding the city constitute a public highway, the use whereof may be regulated by distributing certain classes of vessels into certain specified localities, under the statute of 1830 (Davies' Laws, p. 705); but, 4. That no part of the same can be set apart for any private use; 5. That the lease, in granting an exclusive use, is *pro tanto* void; but 6. That such is not the true intent of the instrument, the written clause being controlled by the whole tenor of the lease, which is merely a grant of the right to collect wharfage; 7. That if an exclusive use is conveyed, the slip itself is not included, and the grant affects the piers and bulkhead only. The justice cited *The People* v. *Morris*, 13 Wend. 325; *Presb. Church* v. *City of New York*, 5 Cow. 540; *Coates* v. *The Mayor*, 7 id. 585; *Vanderbilt* v. *Adams*, 7 id. 349; *The Mayor* v. *Nash*, decided in this court, and sustaining the ordinance of the common council prohibiting intelligence offices, unless licensed; *The Mayor* v. *Williams*, re-

ported *ante*, p. 516; *Hart* v. *The Mayor*, 3 Paige, 213; 9 Wend. 577; *Grant* v. *Ogden*, 9 Wheat. 1; also, 1 Hill, 469; 1 Denio, 540; 4 id. 341; 24 Pick. 352; id. 359; 14 Ohio, 586; 12 Johns. 122.)

The defendant appealed to this court.

*E. Delafield Smith*, for the defendant.

*John D. MacGregor*, for the plaintiffs.

BY THE COURT. INGRAHAM, FIRST J.—(After referring to the facts.)—There can be no doubt, that laying out of view the exclusive rights granted to the lessees, the dockmaster had a right, by the ordinance, to give the order, and a refusal to obey exposed the defendant to the penalty. The ordinance imposing the penalty requires the person having charge of any vessel or small craft, in any of the public slips, when ordered so to do by the dockmaster, to remove the same out of the slip, or from one part of the slip to another, within a certain time.

Under this ordinance the party in charge of the craft was bound to comply with the direction of the dockmaster, if the order was given in compliance with the ordinance. The dockmaster was undoubtedly required to give the defendant a reasonable time within which to comply; but no question is raised upon the legality of the order in this respect.

It is urged by the defendant that the object of requiring the removal was to put in the slip a sea vessel, which is forbidden by the statute of 1813. (Davies' City Laws, p. 557.) Whether that was so or not, it furnished no excuse to the defendant for disobeying the order. He had no right to judge of the propriety of the use intended to be made of the slip after the removal had taken place. If the law was violated it imposed a penalty for the offence, but did not authorize the violation of the order to remove by the defendant. It does not appear from the evidence that the bark was either a registered or sea vessel, and if not, then the prohibition does not apply. Although we may suppose she was intended for

such use, yet the defendant should have shown that fact by proof, and not left it to mere presumption. (*a*)

The main question in this case, however, is, whether the granting of an exclusive use of a slip by lease, deprives the common council of the power of enforcing the ordinances which apply to the public slips of the city.

I think there can be no doubt that the lease conveyed, not only the exclusive use of the piers, but, by express grant, also, Coenties slip. The meaning of the term slip was defined to be an opening between wharves or piers, by the Supreme Court, in *The Corporation of New York* v. *Scott*, 1 Caines, 548; by the Superior Court, in *Thompson* v. *The Mayor, &c.*, 3 Sand. 498; and by this court, in *Marshall* v. *Vultee*, 1 E. D. Smith, 301; and if the mere grant of the exclusive use of this property prevented the legislation of the common council from being operative, then there was sufficient in this lease to prevent the enforcement of the order in this case.

In disposing of this question, it is necessary to separate the powers of the plaintiffs in regard to their property from the legislative authority which they possess as the municipal legislature. In grants of their real or personal estate they act with the same rights and powers that an individual does in regard to his property, and subject to the same rules; but such acts cannot, in my opinion, interfere with the proper exercise of their legislative powers, nor prevent the operation of general laws which in their judgment are necessary for the well being and good government of the city. These questions were fully examined in the case of the *Presbyterian Church* v. *The City of New York*, 5 Cowen, 538. The judge there says, "They had no power, as a party, to make a contract which should control or embarrass their legislative powers or duties. Their enactments in their legislative capacity are to have the same effect upon their individual acts as upon those of any other persons or the public at large, and no

(*a*) The defendant proceeded to trial in the court below, without counsel.— REP.

other effect." In *Coates* v. *The Mayor, &c., of New York*, 7 Cowen, 585, the same doctrine is fully asserted.

Whatever, therefore, may be the rights of the defendant, or of the company, in the property in question, it is not freed by any grant of the plaintiffs from liability to the operation and control of the ordinances of the common council any more than the property of individuals acquired from other sources. They all hold their property subject to this legislation, and the source of the grant to them makes no difference in the liability.

There is authority vested in the common council to grant the exclusive use of the slips, wharves and piers for the exclusive use of steamboats, or any other class or description of ships or vessels. (Davies' Laws of N. Y. p. 705.) But that statute does not authorize granting such exclusive use to an individual for his own purposes; nor can the power there conferred be executed by a grant of a lease for that purpose. The statute requires that it shall be done by passing laws or ordinances, or, in other words, by the common council, in their legislative capacity, and not by the corporation in the management of their real estate. This legislation took place by ordinance, and this slip was thereby appropriated to vessels or small craft belonging to persons residing in New York, New Jersey or Connecticut, and trading to this city. (Rev. Corp. Ords. p. 337.)

The provisions of the statute, and the ordinance in pursu ance of it, cannot be rendered nugatory by any exclusive grant to an individual made by the corporation, but not in their legislative character, nor by ordinance or law; and whatever grant is so made by them, must be taken subject to the general legislation, or relating thereto.

I forbear expressing any opinion as to the power of the common council to grant to individuals the exclusive use of the piers and slips for their private purposes. It is not necessarily involved in this case further than to say, it cannot be done by a grant of such use by deed, in any way to avoid the operation of their general laws.

VOL. IV.                    39

Whether they could, in any event, make such a grant by a law or ordinance, need not now be decided, inasmuch as no ordinance to that effect has been shown by the defendant ever to have been passed.

Judgment affirmed.